CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
12/20/2019
JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 3:18-cr-00022 |
| v. | **MEMORANDUM OPINION** |
| BONIFACIO FERNANDEZ SANCHEZ, | JUDGE NORMAN K. MOON |
| *Defendant.* | |

This matter is before the Court on Defendant Bonifacio Fernandez Sanchez's Motion to Dismiss the Indictment. Dkt. 37. On September 26, 2018, the Government indicted Fernandez Sanchez on one count of illegal reentry in violation of 8 U.S.C. § 1326(a). Dkt. 15. Fernandez Sanchez now moves this Court to dismiss the indictment against him on two grounds, both based on an allegedly invalid prior removal order, which is a necessary element for a § 1326(a) conviction. First, Fernandez Sanchez argues that notice provided to him to appear at his prior removal proceeding failed to contain information necessary to establish the immigration court's jurisdiction. Dkt. 37. Second, Fernandez Sanchez argues that the prior removal should be deemed invalid pursuant to 8 U.S.C. § 1326(d). *Id*. For the reasons stated herein, the Court will grant Fernandez Sanchez's motion and dismiss the indictment against him pursuant to § 1326(d).

### I. Factual Background

Fernandez Sanchez first entered the United States in 2006. Dkt. 46 at 1. That year, he was arrested in Virginia for driving under the influence by the Harrisonburg Police Department. *Id*. As Fernandez Sanchez was in the country without legal authorization, the Harrisonburg Police Department referred him to Immigration and Customs Enforcement ("ICE"). *Id*. On May 12, 2011,

1

while in ICE detention, the Government served Fernandez Sanchez with a Notice to Appear ("NTA") before an immigration court for removal proceedings. *Id*. This NTA did not include the time, date or location of the hearing,[1] nor did it identify the court in which the NTA would be filed. *Id*. The NTA listed certain procedural entitlements, such as the ability to obtain legal representation, the right to present witnesses and evidence, and the right to examine the Government's evidence. Dkt. 37-1. The NTA also stated that "[a]t the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge." *Id*. The NTA was in English, which Fernandez Sanchez does not speak, and Defendant claims that the NTA was never translated to him in Spanish.[2] *Id*. The same day he was served with the NTA, Fernandez Sanchez also received a "notification of rights and request for resolution" form in Spanish, through which he requested a hearing before an immigration judge ("IJ"). Dkt. 37-2.

On June 30, 2011, Fernandez Sanchez was taken from custody to his hearing before an immigration judge.[3] Dkt. 37 at 2. This removal hearing lasted for approximately four minutes. Dkt. 37 at 12. The IJ asked Fernandez Sanchez through an interpreter if he "wished to find an attorney to contest the case, or return to Mexico," and Fernandez Sanchez replied that he would return to Mexico. Dkt. 46 at 2. The IJ then asked him if he had money to return to Mexico on his own, and Fernandez Sanchez stated that he did not. *Id*. The IJ then concluded the hearing and ordered him removed. *Id*.

---

[1] The NTA ordered Sanchez to appear "on a date to be set," "at a time to be set," and at a place "to be determined." Dkt. 46 at 1.

[2] The "Certificate of Service" appearing at the bottom of the NTA states that "[t]he alien was provided oral notice in the Spanish/English language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act." Dkt. 37-1. There is no indication that the procedural entitlements stated in the NTA were provided to Fernandez Sanchez in Spanish.

[3] Fernandez Sanchez cites to an audio recording of the hearing in his briefing. The Government does not object to the contents of this recording.

Fernandez Sanchez was later found in and removed from the United States on January 31, 2013, and again on February 21, 2013. Dkt. 46-3, 46-4. During these subsequent removals—which Fernandez Sanchez made no apparent effort to contest—the 2011 deportation order was reinstated. Dkt. 37 at 2.

On August 21, 2018, Sanchez was arrested in Charlottesville, Virginia, again for driving under the influence. Dkt. 46 at 2. He was taken to Charlottesville-Albemarle Regional Jail then transferred to ICE custody. *Id*. On September 26, 2018, Fernandez Sanchez was indicted on one count of illegal reentry in violation of 8 U.S.C. § 1326(a). Dkt. 15. Fernandez Sanchez now moves to dismiss this indictment, arguing that the immigration court lacked jurisdiction when it ordered Fernandez Sanchez removed in 2011. Dkt. 37. Alternatively, Fernandez Sanchez argues that his 2011 removal proceeding should be declared invalid under 8 U.S.C. § 1326(d). *Id*. The Government opposes the motion. Dkt. 46. The matter is now fully briefed and ripe for review.

## II.     Legal Standard

Criminal defendants may allege defects in indictments in pretrial motions, including "(i) joining two or more offenses in the same count (duplicity); (ii) charging the same offense in more than one count (multiplicity); (iii) lack of specificity; (iv) improper joinder; and (v) failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B). An indictment must contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1); *see also United States v. Daniels*, 873 F.2d 272, 274 (4th Cir. 1992) ("An indictment must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense."). A reviewing court "should regard all well pleaded facts as true when considering a motion to dismiss an indictment." *United States v. Dove*, 70 F. Supp. 2d 634, 636

(W.D. Va. 1999). A court should not dismiss an indictment on the basis of "facts that should" be "developed at trial." *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012). Rather, motions to dismiss indictments should generally be denied unless "the allegations therein, even if true, would not state an offense." *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004).

Collateral attacks of deportation orders are authorized where, as here, those orders are necessary to establish an element of the charged illegal reentry offense.[4] *See United States v. Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987) (review of deportation proceeding must be "made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense"); *United States v. Villareal Silva*, 931 F.3d 330, 335 (4th Cir. 2019) ("We conclude that when an expedited removal is alleged to be *an element in a criminal prosecution*, the defendant in that prosecution must, as a matter of due process, be able to challenge the element –*i.e.*, to contend that the removal was invalid – if he did not have the prior opportunity to do so."). "In this context—the context of an alien's collateral attack of a removal order—courts can and do consider motions to dismiss indictments that necessarily amount to more than mere facial challenges to the indictments' sufficiency." *United States v. Silvestre-Gregorio*, No. 2:18-cr-00155-JRG-CLC, 2019 WL 2353215, at *9 (E.D. Tenn. June 3, 2019); *see also Mendoza-Lopez*, 481 U.S. at 837–39 (requiring "some meaningful review" of the prior deportation proceeding in the motion to dismiss posture).

Under § 1326(d), a defendant mounting a collateral attack against an underlying deportation order must show that (1) he "exhausted any administrative remedies that may have

---

[4] The elements of illegal reentry under 8 U.S.C. § 1326 are as follows: (1) the defendant "has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding"; and (2) the defendant thereafter "enters, attempts to enter, or is at any time found in the United States" without express advance consent from the Attorney General. 8 U.S.C. § 1326(a). The Fourth Circuit has recognized that a valid "deportation order is an element of the offense of illegal reentry." *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005).

4

been available to seek relief against the order"; (2) the deportation proceedings "at which the order was issued improperly deprived" him of the "opportunity for judicial review"; and (3) entry of the order was "fundamentally unfair." If a "defendant satisfies all three requirements, the illegal reentry charge must be dismissed as a matter of law." *El Shami*, 434 F.3d at 663; *Villareal Silva*, 931 F.3d at 337.

### III. Analysis

Fernandez Sanchez raises two grounds for collaterally attacking the indictment against him. First, he alleges that the NTA's failure to identify the immigration court in which the removal order was filed was a fatal jurisdictional defect, and thus the immigration court lacked subject matter jurisdiction in its 2011 removal. Fernandez Sanchez claims that such a defect allows him to deviate from the statutorily provided method of collateral attack provided by § 1326(d). Second, Fernandez Sanchez alleges that the 2011 removal should be deemed invalid pursuant to § 1326(d). Because the Court concludes the 2011 removal was indeed invalid pursuant to § 1326(d), the Court will dismiss the indictment against Fernandez Sanchez on those grounds and decline to reach his jurisdictional argument.

#### A. Fernandez Sanchez's § 1326(d) Collateral Attack

Fernandez Sanchez identifies a multitude of shortcomings in his four-minute 2011 removal proceeding,[5] but in meeting the three elements of § 1326(d), two alleged errors are relevant: the

---

[5] For example, Fernandez Sanchez alleges, and the Government does not appear to deny, that the IJ failed to abide by *any* of the removal hearing requirements set out by 8 C.F.R. § 1240.10, which provides:

(a) Opening. In a removal proceeding, the immigration judge shall:

(1) Advise the respondent of his or her right to representation, at no expense to the government, by counsel of his or her own choice authorized to practice in the proceedings and require the respondent to state then and there whether he or she desires representation;

5

failure to properly advise Fernandez Sanchez of the right to appeal the IJ's decision, and the failure to properly advise him of his apparent eligibility for pre-conclusion voluntary departure. Fernandez Sanchez claims that the former satisfies the first two elements of § 1326(d)—exhaustion of administrative remedies and denial of opportunity for meaningful judicial review—while the latter violation rendered the 2011 removal fundamentally unfair. The Court will take these arguments in turn.

1. **Exhaustion and Judicial Review**

Fernandez Sanchez claims that because he was never properly apprised of his right to appeal, he was denied the opportunity to exhaust administrative remedies or obtain meaningful judicial review, thus satisfying the first two requirements of § 1326(d).

An invalid waiver of the right to appeal deprives an alien of judicial review, and similarly, an invalid waiver excuses an alien's failure to exhaust any administrative remedies. *Mendoza Lopez*, 481 U.S. 828, 840; *see also United States v. Ortiz*, 488 F. App'x 717, 718 (4th Cir. 2012) (unpublished) ("Courts have generally held that the exhaustion requirement of § 1326(d)(1) must be excused where an alien's failure to exhaust results from an invalid waiver of the right to an

---

(2) Advise the respondent of the availability of pro bono legal services for the immigration court location at which the hearing will take place, and ascertain that the respondent has received a list of such pro bono legal service providers.

(3) Ascertain that the respondent has received a copy of appeal rights.

(4) Advise the respondent that he or she will have a reasonable opportunity to examine and object to the evidence against him or her, to present evidence in his or her own behalf and to cross-examine witnesses presented by the government (but the respondent shall not be entitled to examine such national security information as the government may proffer in opposition to the respondent's admission to the United States or to an application by the respondent for discretionary relief);

(5) Place the respondent under oath;

(6) Read the factual allegations and the charges in the notice to appear to the respondent and explain them in non-technical language; and

(7) Enter the notice to appear as an exhibit in the Record of Proceeding.

administrative appeal.") (internal quotations, citations, and alterations omitted). As the Fourth Circuit has written, "[t]he Supreme Court [has] held that an immigration judge's failure to advise the alien of his right to apply for [alternative relief] and to ensure that the alien's waiver of his right to appeal the deportation order constituted a complete deprivation of administrative and judicial review within the meaning of section 1326(d)."[6] *El Shami*, 434 F.3d at 664 (citing *Mendoza-Lopez*, 481 U.S. at 840).

Although the NTA provided to Fernandez Sanchez advised him of his ability to "appeal an adverse decision by the immigration judge," Dkt. 37-1, the Government does not appear to dispute Fernandez Sanchez's contention that it was not provided to him in Spanish. Dkt. 46 at 1–2. Rather, the Government's only evidence that Fernandez Sanchez was apprised of a right to appeal is Exhibit D in Fernandez Sanchez's Motion to Dismiss. Dkt. 37. Titled "Order of the Immigration Judge," the first paragraph of the document states: "This is a summary of the oral decision entered on [June 30th, 2011]. This memorandum is solely for the convenience of the parties. If the proceedings should be appealed or reopened, the oral decision will become the official opinion in the case." Dkt. 37-4. Where the document states "Appeal: Waived / Reserved," the IJ circled "Waived" and struck through "Reserved." *Id*. However, nowhere in the in the hearing did the IJ mention appellate rights. As the document is intended to merely summarize the IJ's oral order, Dkt. 37-4, the audio recording controls. *United States v. Vasquez Flores*, 362 F. Supp. 3d 349, 357 (W.D. Va. Jan. 25, 2019).

---

[6] Other courts have applied a more relaxed standard in finding these two elements satisfied. In *Itehua*, for example, the court held that because the defendant was not adequately apprised that he might qualify for pre-conclusion voluntary departure, "he did not understand that he had anything to appeal." *United States v. Itehua*, No. 3:17-cr-119, 2018 WL 1470250, *6 (E.D. Va. Mar. 26, 2018).

In a recent, similar case in the Western District of Virginia, Judge Dillon concluded that where no mention of appellate rights was made at the removal hearing, but the resulting summary of the hearing stated that the defendant had nevertheless waived any appeal, the hearing controlled, no appeal rights were waived, and the first two elements of § 1326(d) were found satisfied. *Vasquez Flores*, 362 F. Supp. 3d at 357. Finding her decision persuasive, the Court finds that there is no evidence that Fernandez Sanchez was even *told* of his right to appeal the IJ's decision, let alone evidence that he waived such a right. *Mendoza-Lopez*, 481 U.S. at 840. Accordingly, the Court concludes that the first two elements of § 1326—exhaustion of administrative remedies and opportunity for judicial review—have been satisfied. *El Shami*, 434 F.3d at 664; *Ortiz*, 488 F. App'x at 718; *Vasquez*, 362 F. Supp. 3d at 357.

2. **Fundamental Unfairness**

"To demonstrate fundamental unfairness a defendant must show that (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *El Shami*, 434 F.3d at 664. Fernandez Sanchez claims that his 2011 removal proceeding was deficient in a number of ways,[7] but he appears to identify only one as prejudicial. Dkt. 37 at 12–13. Specifically, Fernandez Sanchez argues that the IJ's failure to apprise him of his potential eligibility for pre-conclusion voluntary departure violated his due process rights. *Id*. at 13. As to the second element, he argues that he was prejudiced by this due process violation because there is a reasonable probability that he would have received voluntary departure had he been advised of it. *Id*. at 13–14.

---

[7] *See supra* note 5.

### i. Due Process Violation

The first issue is whether the IJ's failure to properly advise Fernandez Sanchez of his potential eligibility for pre-conclusion voluntary departure violated his due process rights. *See Zadvydas v. Davis*, 533 U.S. 678, 694–95 (2001) ("the [Fifth Amendment's] Due Process Clause protects an alien subject to a final order of deportation"). Fernandez Sanchez claims that "the immigration judge misapplied the standard for pre-conclusion voluntary departure" by judging Fernandez Sanchez's entitlement to voluntary departure based on his ability to pay, which is a requirement of the more demanding *post*-conclusion voluntary departure. Dkt. 49 at 7.

Pre-conclusion voluntary departure "allows an alien charged with removability to depart the country voluntarily prior to the completion of removability proceedings, pursuant to 8 U.S.C. § 1229c(a)(1)." *Narine v. Holder*, 559 F.3d 246, 248 n.1 (4th Cir. 2009). Pursuant to 8 C.F.R. § 1240.26(b)(1)(i), a non-citizen may be granted pre-conclusion voluntary departure if: (1) the request is made "prior to or at the master calendar hearing[8] at which the case is initially calendared for a merits hearing;" (2) he makes no additional requests for relief, or withdraws any previous requests; (3) concedes removability; (4) waives appeal of all issues; and (5) has not been convicted of an aggravated felony. "To receive pre-conclusion voluntary departure, an alien need not show good moral character or that he has the financial means to depart." *Itehua*, 2018 WL 1470250 at *2 (citing *Arguelles-Campos*, 22 I. & N. Dec. 811, 813 (BIA 1999)). Although ability to pay is not part of the criteria for eligibility, pre-conclusion voluntary departure will be at the non-citizen's own expense. *See* 8 U.S.C. § 1229c; 8 C.F.R. § 1240.26(b)(1)(i). Ultimately, the IJ

---

[8] "A Master Calendar Hearing is typically an alien's first appearance before an IJ in removal proceedings." *Mejia v. Sessions*, 866 F.3d 573, 577 (4th Cir. 2017).

must exercise his discretion in deciding whether to grant pre-conclusion voluntary departure. As the Board of Immigration Appeals stated:

> [M]any factors may be weighed in exercising discretion with voluntary departure applications, including the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and other evidence of bad character or the undesirability of the applicant as a permanent resident. We further stated that discretion may be favorably exercised in the face of adverse factors where there are compensating elements such as long residence here, close family ties in the United States, or humanitarian needs.

*In Re Arguelles-Campos*, 22 I. & N. Dec. 811, 817 (BIA 1999). The standard for post-conclusion voluntary departure, on the other hand, is more stringent. An alien must demonstrate, among other requirements, that they have been in the United States "for a period of at least one year" before they were served with a notice to appear and that they have been "a person of good moral character for at least 5 years immediately preceding the alien's application for voluntary departure." 8 U.S.C. § 1229c(b)(1). Importantly, the alien must also establish by clear and convincing evidence "that the alien has the means to depart the United States and intends to do so." 8 U.S.C. § 1229c(b)(1)(D). Post-conclusion voluntary departure, as the name indicates, applies at or after the conclusion of the removal proceedings.[9] 8 C.F.R. § 1240.26(c).

---

[9] The Government appears to argue that the IJ was correct to apply the standard for post-conclusion rather than pre-conclusion voluntary departure at the June 30, 2011 removal hearing. Dkt. 46 at 7–8. But the Fourth Circuit has stated that "'pre-conclusion voluntary departure' allows an alien charged with removability to depart the country voluntarily prior to the completion of removability proceedings." *Narine v. Holder*, 559 F.3d 246, 248 (4th Cir. 2009); *See also*, *United States v. Itehua*, 2018 WL 1470250, at *2 (holding that pre-conclusion applies "[i]f an alien applies before removal proceedings conclude"). After the IJ finds the alien removable, only post-conclusion voluntary departure may be successfully sought. *Narine*, 559 F.3d at n.1. Even if the Court accepts the Government's argument that "the immigration judge implicitly determined he was not 'apparently eligible' for voluntary departure," Dkt. 46 at 7, there is no dispute that this occurred before the IJ found Fernandez Sanchez removable and concluded the proceedings. *Id*. at 2. Thus by the undisputed timeline, pre-conclusion voluntary departure was the correct standard to have applied.

10

Finally, the Code of Federal Regulations imposes a duty on an immigration judge in a removal hearing to notify an alien of any relief for which they are apparently eligible "and shall afford the alien an opportunity to make application [for such relief] during the hearing." 8 C.F.R. § 1240.11(a)(2).

At the 2011 removal hearing, the IJ asked Fernandez Sanchez if he had the resources to pay for his own return to Mexico. Dkt. 46 at 2. Fernandez Sanchez replied that he did not. *Id.* The IJ then ordered Fernandez Sanchez deported. *Id.* The Government argues that the IJ did all that was required. "[A]fter inquiring as to his financial ability to return to Mexico, having understood he was in custody in Virginia, the immigration judge implicitly determined he was not 'apparently eligible' for voluntary departure." Dkt. 46 at 7 (citing 8 C.F.R. § 1240.11(a)(2)). However, as Fernandez Sanchez correctly argues, ability to pay is only a criterion for *post*-conclusion—not *pre*-conclusion—voluntary departure.[10] It appears then that the IJ did not abide by § 1240.11(a)(2), but this does not necessarily mean Fernandez Sanchez's right to due process was violated.

The Fourth Circuit has not addressed whether an immigration judge's violation of § 1240.11(a)(2) also violates a defendant's due process rights, but several district courts within the circuit have addressed the issue at length. *United States v. Ordoñez*, 328 F. Supp. 3d. 479, 496–97 (D. Md. 2018); *Itehua*, 2018 WL 1470250 at *3; *see also United States v. Sanchez-Lopez*, No. 2:19-cr-64, 2019 WL 5686914, at *3 (E.D. Va. Nov. 1, 2019) (addressing broader issue of an IJ's failure to advise an alien about discretionary relief).

Judge Gibney of the Eastern District of Virginia confronted a remarkably similar set of circumstances last year in *United States v. Itehua*, 2018 WL 1470250. In the June 2011 removal

---

[10] Although financial means is not a consideration for eligibility for pre-conclusion voluntary departure, actually departing the country must nevertheless be at the alien's expense, 8 U.S.C. § 1229c, which is relevant in analyzing whether this due process violation in fact prejudiced Fernandez Sanchez.

11

proceeding of Leodan Itehua, a Mexican native and citizen, the IJ asked him if he had sufficient funds to leave the country voluntarily, Itehua replied that he did not, and the IJ ordered him removed. *Id*. When detained in Virginia in 2017 and indicted for illegal reentry, Itehua moved to dismiss the indictment against him, arguing that the IJ did not properly advise him of his eligibility for pre-conclusion voluntary departure as required by 8 C.F.R. § 1240.11(a)(2). *Id*.

Judge Gibney held that this failure to adequately apprise Itehua of his potential eligibility for pre-conclusion voluntary departure constituted a Due Process Clause violation. *Itehua*, 2018 WL 1470250, at *3. Although voluntary departure is a discretionary remedy, Judge Gibney wrote, "a right to seek relief differs from a right to the relief itself." *Id.* at 3. "Thus, the due process issue in this case concerns not whether the Constitution mandates relief from deportation, but whether the IJ committed a fundamentally unfair procedural error by failing to inform [the defendant-alien] of the possibility of that relief and neglecting to allow him to apply during his hearing." *Id.* at 3.

Similarly, in *United States v. Ordonez*, the defendant challenged a prior removal where the immigration judge had considered but erroneously denied the defendant the ability to voluntarily depart. The immigration judge had concluded in error that a state charge against the defendant constituted an aggravated felony, rendering the defendant ineligible for pre-conclusion voluntary departure. 328 F. Supp. 3d at 493–94. Judge Grimm found persuasive the fact that judges are mandated by § 1240.11(a)(2) to apprise aliens of such rights, concluding that "[i]t was a 'fundamentally unfair procedural error to misinform Ordonez that he was not eligible for relief, and it constituted a violation of Ordonez's due process rights." *Ordonez*, 328 F. Supp. 3d at 495.

On the other hand, the Court in *United States v. Sanchez-Lopez* confronted a broader question of whether the failure to advise a defendant of potential entitlement to discretionary relief constituted a due process violation for the purposes of establishing fundamental fairness under

12

§ 1326(d). No. 2:19-cr-64, 2019 WL 5686914, at *3 (E.D. Va. Nov. 1, 2019). Asserting that the majority of circuits, though not yet the Fourth Circuit, held that failure to apprise of discretionary relief did not violate due process, Judge Smith concluded the same. *Id.* (collecting cases). However, she explicitly distinguished the case from *Itehua*, where the "the immigration officer was required to provide such notification" of eligibility for voluntary departure. Id. at 3.

I agree with Judges Gibney and Grimm. Federal law may empower immigration officials with discretion in granting the right to voluntarily depart, but it also affirmatively mandates that the official at least make the alien aware of this right. This is for good reason. As the Supreme Court has noted, voluntary departure is "of great importance" to an alien, because "by departing voluntarily the alien facilitates the possibility of readmission." *Dada v. Mukasey*, 554 U.S. 1, 11 (2008). Furthermore, this case is distinguishable from *Sanchez-Lopez*, where the immigration judge was under no obligation to advise the defendant of the relief sought. 2019 WL 5686914, at *3. In the present case, the IJ had an affirmative obligation by the applicable regulations to apprise Fernandez Sanchez of this relief. 8 C.F.R. § 1240.11(a)(2). Thus, when the IJ failed to properly apprise Fernandez Sanchez of his apparent eligibility to pre-conclusion voluntary departure, he violated Fernandez Sanchez's due process rights.

### ii. Prejudice

To "establish fundamental unfairness under § 1326(d)," a defendant "must show that he suffered actual prejudice as a result of the due process violations in the removal proceedings." *United States v. Lopez-Collazo*, 824 F.3d 453, 462 (4th Cir. 2016) (internal emphasis and citations omitted). To meet the actual prejudice requirement, the defendant "must demonstrate 'that, but for the errors complained of, there was a reasonable probability that he would not have been deported.'" *Id.* (quoting *El Shami*, 434 F.3d at 665). "[T]his is not a

generalized showing of prejudice; rather, the defendant must link the actual prejudice he claims to have suffered to the specific due process violation at issue." *Id.*

Fernandez Sanchez argues that, but for the violation of his due process rights, he would have established his eligibility for relief through pre-conclusion voluntary departure. Dkt. 37 at 13. There is ample evidence to support his contention. Had he been properly apprised of this right, Fernandez Sanchez could have easily made a request before or during the master calendar hearing and waived appeal had he been apprised of the right, and he did in fact concede removability and refrained from making additional requests. *See* 8 C.F.R. § 1240.26(b)(1)(i). Fernandez Sanchez's conviction of driving under the influence is not an aggravated felony, and there is no other evidence that, at the relevant time period, he had any prior convictions that would have made him ineligible for consideration. 8 U.S.C. 1101(a)(43) (defining aggravated felonies); Dkt. 37 at 14. As is also relevant in these considerations, Fernandez Sanchez had resided in the country since he was a minor, and he had two children for whom he was the primary caregiver. Dkt. 37 at 15.

But the Court's inquiry does not end there. At oral argument, the Government argued that even if Fernandez Sanchez's statement at his 2011 deportation hearing that he was not able to depart on his own was improperly considered at the 2011 removal hearing, it is relevant now when considering prejudice. Specifically, the Government contends that if Fernandez Sanchez did not have the means to voluntarily depart, it makes no difference whether or not he was erroneously denied an opportunity he could not have utilized. But in order to find that Fernandez Sanchez was prejudiced by the IJ's unlawful proceeding, the Court must only find that there would have been a "reasonable probability" that he would have departed. *Lopez-Collazo*, 824 F.3d at 462. Thus, while the question of whether he had the means to depart certainly does bear on whether he would have in fact done so, the Court's analysis in addressing that question is necessarily different than it

14

would be in the post-conclusion voluntary departure setting. In that context, his mere admission that he did not have the means to return would have been the end of the inquiry into the matter, given a defendant's obligation to show by clear and convincing evidence that he has the financial ability and intent to voluntarily depart. 8 U.S.C. § 1229c(b)(1)(D).

For purposes of the prejudice analysis, moreover, the Court must also consider the very limited information gleaned from the hearing. "[T]he IJ has an affirmative obligation to help establish and develop the record in the course of such proceedings, especially when, as here, an alien is unrepresented by counsel." *Delgado v. Mukasey*, 508 F.3d 702, 706 (2d Cir. 2007). "Because aliens appearing *pro se* often lack the legal knowledge to navigate their way successfully through the morass of immigration law, and because their failure to do so successfully might result in their expulsion from this country, it is critical that the IJ scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Agyeman v. I.N.S.*, 296 F.3d 871, 877 (9th Cir. 2002) (internal citations omitted)*; see also*, *Richardson v. Perales*, 402 U.S. 389, 410 (1971) (finding that an administrative law judge "acts as an examiner charged with developing the facts"); *Al Khouri v. Ashcroft*, 362 F.3d 461, 465 (8th Cir. 2004) ("[T]he IJ did not fulfill his duty to fully develop the record."); *Mendoza-Garcia v. Barr*, 918 F.3d 498, 504 (6th Cir. 2019) ("We agree with our sister circuits that to provide a fundamentally fair proceeding, immigration judges are bound by the recognized duty to help pro se parties develop the record.").

At the 2011 removal hearing, when the IJ asked whether Fernandez Sanchez had the ability to depart on his own, the IJ asked no follow-up questions, such as whether he could procure means to depart or receive assistance from friends and family. The IJ did not advise Fernandez Sanchez why it would be advantageous to procure such means, or even explain why he was asking about such means. As a result, not only did the IJ's failure to properly apprise Fernandez Sanchez of his

15

apparent eligibility for voluntary departure violate Fernandez Sanchez's due process, it also hindered his ability to demonstrate prejudice. Other circuits have held that this itself constitutes prejudice:

> Given that the fundamental error in Mr. Al Khouri's hearing prevented him from fully developing the merits of his case, we cannot say that, but for the lack of process afforded him, he would have been granted relief from removal. Prejudice in this context, however, does not require "but for" causation. Instead, "prejudice may be shown where the IJ's inadequate explanation of the hearing procedures and failure to elicit pertinent facts prevented the alien from presenting evidence relevant to their claim."

*Al Khouri*, 362 F.3d at 466 (citing *Agyeman*, 296 F.3d at 884–85). The Fourth Circuit has not held one way or the other whether a court should presume prejudice where the IJ has failed to develop facts that may have shown prejudice, and the Court declines to take that step here. However, district courts within the Fourth Circuit have placed little weight on such hearing statements by aliens when the IJ fails to provide *any* context or probing in response. *United States v. Ordonez*, 328 F. Supp. 3d 479, 507 (D. Md. 2018) ("[I]t is unclear whether Ordoñez had family and friends who could have helped him fund the trip back to Honduras. Nonetheless . . . Ordoñez has shown prejudice."); *United States v. Miranda-Rivera*, 206 F. Supp. 3d 1066, 1072 (D. Md. 2016) ("It would be unfair to evaluate the potential success of Mr. Miranda Rivera's application for asylum and withholding of removal by looking only to an underdeveloped record arising from a constitutionally deficient deportation proceeding"). I similarly find the record was underdeveloped by the IJ in a meaningful sense on this key issue, and I therefore view Fernandez Sanchez's admission as having negligible value to the Government's position.

However, where discretionary relief is at play, courts must nevertheless conclude that there is a reasonable probability that such relief, if properly analyzed, would have been granted. *United States v. Villarreal Silva*, 931 F.3d 330, 337–39 (4th Cir. 2019). In *Villarreal Silva*, the Fourth

Circuit held that the defendant-alien was not prejudiced when his extensive history of fraud and criminal convictions "strongly indicate[d] that the Attorney General would not have exercised his discretion favorably with respect to" the relief requested by the defendant-alien, stating that he "did not sufficiently demonstrate *a reasonable probability* that the Attorney General would have" granted the discretionary relief sought. *Id*. (emphasis retained).

Here, and in contrast to *Villareal-Silva*, the Government does not appear to dispute that Fernandez Sanchez meets all of the enumerated requirements for pre-conclusion voluntary departure. He had not been convicted of any aggravated felony, made no additional requests for relief, and did nothing to suggest he would not have conceded removability or waived his right to appeal other issues. 8 C.F.R. § 1240.26(b)(1)(i). Furthermore, taking advantage of voluntary departure would have had clear pragmatic consequences for Fernandez Sanchez too. Fernandez Sanchez had two young children that he was providing for at the time, and he himself had come to the United States as a minor in 2006. Dkt. 37 at 15. Voluntary departure, rather than an order of removal, would have left open the possibility for a lawful return to the United States. *Dada v. Mukasey*, 554 U.S. 1, 11 (2008). A person subject to a removal, as Fernandez Sanchez was in 2011, must wait ten years before applying for lawful residence. 8 U.S.C. § 1182(A)(9)(A). While the Court cannot say with certainty what would have occurred, there is a reasonable probability that Fernandez Sanchez would have been found eligible for pre-conclusion voluntary departure—having satisfied all its statutory requirements—and, taking into account the thin record developed by the IJ, that he would have in fact voluntarily departed.

### B. Fernandez Sanchez's Jurisdictional Challenge

Fernandez Sanchez also argues that the indictment against him should be dismissed because of a jurisdictional defect in the 2011 NTA. Namely, the NTA failed to identify the court in which the NTA was filed. Dkt. 45 at 1.

The Fourth Circuit stopped just short of rejecting such a challenge in its recent decision in *United States v. Cortez*, 930 F.3d 350 (4th Cir. 2019). Although the Fourth Circuit expressed skepticism that such a claim could ever succeed outside the framework of § 1326(d), Fernandez Sanchez is correct that his jurisdictional argument was not entirely foreclosed. Nevertheless, the indictment shall be dismissed on other grounds, so this issue need not be decided here.

### IV. CONCLUSION

Because Fernandez Sanchez has successfully met each of § 1326(d)'s three requirements, the indictment against him must be dismissed, as the Government cannot rely on this prior removal order to prove a necessary element of its illegal reentry case. An appropriate order will issue.

Entered this __20th__ day of December, 2019.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE